# EXHIBIT A

Received and E-Filed for Record
4/13/2020 11:43 AM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Jeff Fiore

CAUSE NO. 20-04-04556

| | | |
|---|---|---|
| NICETTE HUMPHREYS AND EARLE HUMPHREYS, | § § § | IN THE JUDICIAL COURT OF |
| *Plaintiffs,* | § § | |
| V. | § § | MONTGOMERY COUNTY, TEXAS |
| AMICA MUTUAL INSURANCE COMPANY AND TRAVIS HAGEN, | § § § § | Montgomery County - 410th Judicial District Court |
| | § | _____ DISTRICT COURT |
| *Defendant.* | | |

## PLAINTIFFS' ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Nicette Humphreys and Earle Humphreys, ("Plaintiffs"), and files *Plaintiffs' Original Petition, Jury Demand, and Request for Disclosure*, complaining of Amica Mutual Insurance Company ("Amica") and Travis Hagen ("Hagen") (or collectively "Defendants") and for cause of action, Plaintiffs respectfully shows the following:

### DISCOVERY CONTROL PLAN

1.     Plaintiffs intend to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4.

### PARTIES

2.     Plaintiffs, Nicette Humphreys and Earle Humphreys reside in Montgomery County, Texas.

3.     Defendant, Amica Mutual Insurance Company, is a foreign insurance company, engaged in the business of insurance in the State of Texas. Plaintiffs request service of citation upon Amica Mutual Insurance Company, through its registered agent for service: **c/o Robert R. Foss, Jr., 2150 Town Square Place, Suite 600, Sugar Land, Texas 77479-1465**.

Plaintiffs request service at this time.

4.   Defendant Travis Hagen is an individual resident of Livingston, Texas.  Hagen may be served with citation at the address listed with the Texas Department of Insurance: **208 Rainbow Drive, No. 10843, Livingston, Texas 77399-2008**.  Plaintiffs request service at this time.

## JURISDICTION

5.   The Court has jurisdiction over Amica Mutual Insurance Company because this Defendant engages in the business of insurance in the State of Texas, and the causes of action arise out of Amica's business activities in the state, including those in Montgomery County, Texas, with reference to this specific case.

6.   The Court has jurisdiction over Travis Hagen because this Defendant engages in the business of adjusting insurance claims in the State of Texas, and the causes of action arise out of this Defendant's business activities in the State of Texas, including those in Montgomery County, Texas, with reference to this specific case.

## VENUE

7.   Venue is proper in Montgomery County, Texas because the insured property is located in Montgomery County, Texas, and all or a substantial part of the events giving rise to this lawsuit occurred in Montgomery County, Texas.  TEX. CIV. PRAC. & REM. CODE § 15.032.

## FACTS

8.   Plaintiffs assert claims for breach of contract, common law bad faith, fraud, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.

2

9.    Plaintiffs own an Amica Mutual Insurance Company insurance policy, number 60054224TF ("the Policy"). At all relevant times, Plaintiffs owned the insured premises located at **9051 Forest Cliff Court Conroe, Texas 77302** ("the Property").

10.   Amica Mutual Insurance Company or its agent sold the Policy, insuring the Property, to Plaintiffs. Amica Mutual Insurance Company represented to Plaintiffs that the Policy included hail and windstorm on or about May 9, 2019, the Property sustained extensive damage resulting from a severe storm that passed through the Conroe/Montgomery County, Texas area.

11.   In the aftermath of the hail and windstorm, Plaintiffs submitted a claim to Amica against the Policy for damage to the Property. Amica assigned claim number 60003683049 to Plaintiffs' claim.

12.   Plaintiffs asked Amica to cover the cost of damage to the Property pursuant to the Policy.

13.   Amica hired or assigned its agent, Hagen, to inspect and adjust the claim. Hagen conducted an inspection on or about November 2019. Hagen's findings were there were no covered losses and the damage occurred before inception of the Amica policy. After application of depreciation and $6,690 deductible, Plaintiffs were left without adequate funds to make repairs on the entirety of their claim.

14.   Amica, through its agent, Hagen, conducted a substandard and improper inspection of the Property, which grossly undervalued the cost of repairs in its estimate and yielded an unrealistic amount to underpay coverage.

15.   Amica and Hagen have ultimately refused full coverage which includes, but is not limited to, replacement of the roof and additional exterior damage. Specifically, Hagen found no

3

damage from a covered peril to Plaintiffs' roof. The third-party inspector hired to review the damage to the Property found damage to Plaintiffs' roof. In addition, the third-party inspector found damage to the vents, flashings, gutters, and downspouts that were completely absent from Hagen's assessment. The storm compromised the integrity of the roof allowing water to enter, causing water damage to the interior entryway/hallway and kitchen.

16. The damage to Plaintiffs' Property is currently estimated at $46,729.97.

17. Hagen had a vested interest in undervaluing the claims assigned to him by Amica in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of the third-party inspector's as well as the difference in valuation is evidence of unfair claims handling practices on the part of Hagen.

18. Furthermore, Hagen was aware of Plaintiffs' deductible prior to inspecting the Property. Hagen had advanced knowledge of the damages he needed to document in order to be able to deny the claim.

19. Hagen misrepresented the actual amount of damage Plaintiffs' Property sustained in addition to how much it would cost to repair the damage. Hagen made these misrepresentations as a licensed Texas adjuster with the hope that Plaintiffs would rely on his expertise and accept the bad faith estimate as a true representation of the damages.

20. After reviewing Plaintiffs' Policy, Hagen misrepresented that the damage was caused by non-covered perils. Hagen used his expertise to fabricate plausible explanations for why visible damage to Plaintiffs' Property would not be covered under the policy.

21. As stated above, Amica and Hagen improperly and unreasonably adjusted Plaintiffs' claim.

4

Without limitation, Amica and Hagen misrepresented the cause of, scope of, and cost to repair damages to Plaintiffs' Property, as well as the amount of insurance coverage for Plaintiffs' claim or loss under the Policy.

22.    Amica and Hagen made these and other false representations to Plaintiffs, either knowingly or recklessly, as a positive assertion, without knowledge of the truth. Amica and Hagen made these false representations with the intent that Plaintiffs act in accordance with the misrepresentations regarding the grossly deficient damage and repair estimates prepared Hagen.

23.    Plaintiffs relied on Amica and Hagen's misrepresentations, including but not limited to those regarding coverage, the cause of, scope of, and cost to repair the damage to Plaintiffs' Property. Plaintiffs' damages are the result of Plaintiffs' reliance on these misrepresentations.

24.    Upon receipt of the inspection and estimate reports from Hagen, Amica failed to assess the claim thoroughly. Based upon Hagen's grossly unreasonable, intentional, and reckless failure to investigate the claim properly prior to underpaying coverage, Amica failed to provide coverage due under the Policy, and Plaintiffs suffered damages.

25.    Because Amica and Hagen failed to provide coverage for Plaintiffs' insurance claim, Plaintiffs have been unable to complete any substantive repairs to the Property. This has caused additional damage to Plaintiffs' Property.

26.    Furthermore, Amica and Hagen failed to perform their contractual duties to Plaintiffs under the terms of the Policy. Specifically, Hagen performed an unreasonable and substandard inspection that allowed Amica to refuse to pay full proceeds due under the Policy, although

due demand was made for an amount sufficient to cover the damaged Property, and all conditions precedent to recover upon the Policy were carried out by Plaintiffs.

27. Amica and Hagen's misrepresentations, unreasonable delays, and continued denials constitute a breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance Code.  Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between Defendant and Plaintiffs.

28. Amica and Hagen's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a) (1).  Amica and Hagen have failed to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy. Specifically, Amica and Hagen have failed to, in an honest and fair manner, balance their own interests in maximizing gains and limiting disbursements, with the interests of Plaintiffs by failing to timely pay Plaintiffs coverage due under the Policy.

29. Amica and Hagen's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a) (2) (A).  Amica and Hagen failed to provide Plaintiffs' a reasonable explanation for underpayment of the claim.

30. Additionally, after Amica received statutory demand on or about 02/10/2020, Amica has not communicated that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for failing to settle Plaintiffs' claim properly.

31. Amica and Hagen's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a) (4).  Hagen performed a biased and

6

intentionally substandard inspection designed to allow Amica to refuse to provide full coverage to Plaintiffs under the Policy.

32. Specifically, Amica and Hagen performed an outcome-oriented investigation of Plaintiffs' claims, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property.

33. Amica's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055. Due to Hagen subpar inspection, Amica failed to reasonably accept or deny Plaintiffs' full and entire claim within the statutorily mandated time after receiving all necessary information.

34. Amica's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056. Due to Hagen's intentional undervaluation of Plaintiffs' claims, Amica failed to meet its obligations under the Texas Insurance Code regarding timely payment of the claim. Specifically, Hagen's understatement of the damage to the Property caused Amica to delay full payment of Plaintiffs' claim longer than allowed, and Plaintiffs have not received rightful payment for Plaintiffs' claim.

35. Amica and Hagen's wrongful acts and omissions have forced Plaintiffs to retain the professional services of the attorneys and law firm representing him with respect to these causes of action.

## CAUSES OF ACTION AGAINST DEFENDANT AMICA MUTUAL INSURANCE COMPANY

36. All paragraphs from the fact section of this petition are hereby incorporated into this section.

## BREACH OF CONTRACT

37.   Amica is liable to Plaintiffs for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing. It follows, then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between Amica and Plaintiffs.

38.   Amica's failure and/or refusal to pay adequate coverage as obligated under the Policy, and under the laws of the State of Texas, constitutes a breach of Amica's insurance contract with Plaintiffs.

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

39.   Amica's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are actionable by TEX. INS. CODE §541.151.

40.   Amica's unfair settlement practice of misrepresenting to Plaintiffs' material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (1).

41.   Amica's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though Amica's liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (2) (A).

42.   Amica's unfair settlement practice of failing to provide Plaintiffs a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment and denial of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (3).

8

43.    Amica's unfair settlement practice of refusing to pay Plaintiffs' full claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a) (7).

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

44.    Amica's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are actionable under TEX. INS. CODE §542.060.

45.    Amica's delay in paying Plaintiffs' claim following receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided, constitutes a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

46.    Amica's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts.

47.    Amica's failure to adequately and reasonably investigate and evaluate Plaintiffs' claim, even though Amica knew or should have known by the exercise of reasonable diligence that liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### DTPA VIOLATIONS

48.    Amica's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiffs are consumers of goods and services provided by Amica pursuant to the DTPA.  Plaintiffs have met all conditions

precedent to bring this cause of action against Amica. Specifically, Amica's violations of the DTPA include, without limitation, the following matters:

A.   By its acts, omissions, failures, and conduct, Amica has violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. Amica's violations include, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs' claim, (2) failure to give Plaintiffs the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiffs' property when liability has become reasonably clear, which gives Plaintiffs the right to recover under section 17.46(b)(2).

B.   Amica represented to Plaintiffs that the Policy and Amica's adjusting agent and investigative services had characteristics or benefits they did not possess, which gives Plaintiffs the right to recover under section 17.46(b)(5) of the DTPA.

C.   Amica represented to Plaintiffs that Amica's Policy and adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.   Amica advertised the Policy and adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.

E.   Amica breached an express warranty that the damages caused by wind and hail would be covered under the Policy. This breach entitles Plaintiffs to recover under sections 17.46(b) (12) and (20) and 17.50(a) (2) of the DTPA.

F.   Amica's actions are unconscionable in that Amica took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. Amica's

unconscionable conduct gives Plaintiffs a right to relief under section 17.50(a) (3) of the DTPA; and

G.   Amica's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

49.   Each of the above-described acts, omissions, and failures of Amica is a producing cause of Plaintiffs' damages.   All of Amica's acts, omissions, and failures were committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade Practices Act.

### FRAUD

50.   All allegations above are incorporated herein.

51.   Amica is liable to Plaintiffs for common law fraud.

52.   Each and every misrepresentation described above-concerned material facts that absent such representations, Plaintiffs would not have acted as Plaintiffs did, and Amica knew its representations were false or made recklessly without any knowledge of their truth as a positive assertion.

53.   Amica made the statements intending that Plaintiffs act upon them.   Plaintiffs then acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury constituting common law fraud.

### CAUSES OF ACTION AGAINST DEFENDANT TRAVIS HAGEN

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

54.   All allegations above are incorporated herein.

11

55.    Hagen's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act.  TEX. INS. CODE §541.060(a).

56.    Hagen is individually liable for his unfair and deceptive acts, irrespective of the fact that he was acting on behalf of Amica, because Hagen is a "person," as defined by TEX. INS. CODE §541.002(2).

57.    Hagen knowingly underestimated the amount of damage to the Property.  As such, Hagen failed to adopt and implement reasonable standards for the investigation of the claim arising under the Policy.  TEX. INS. CODE §542.003(3).

58.    Furthermore, Hagen did not attempt in good faith to affect a fair, prompt, and equitable settlement of the claim.  TEX. INS. CODE §542.003(4).

59.    Hagen's unfair settlement practice of failing to provide Plaintiffs a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for partial denial of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice.  TEX. INS. CODE §541.060(a)(3).

60.    Hagen's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

61.    All allegations above are incorporated herein.

62.    Hagen's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiffs are a consumer of goods

12

and services provided by Hagen pursuant to the DTPA.  Plaintiffs have met all conditions precedent to bringing this cause of action against Hagen. Specifically, Hagen's violations of the DTPA include the following matters:

A.    By this Defendant's acts, omissions, failures, and conduct, Hagen has violated sections 17.46(b)(2), (5), and (7) of the DTPA.  Hagen's violations include (1) failure to give Plaintiffs the benefit of the doubt, and (2) failure to write up an estimate reflecting the proper repair of Plaintiffs' Property when liability has become reasonably clear, which gives Plaintiffs the right to recover under section 17.46(b)(2).

B.    Hagen represented to Plaintiffs that the Policy and his adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiffs the right to recover under section 17.46(b)(5) of the DTPA.

C.    Hagen represented to Plaintiffs that the Policy and his adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.    Hagen's actions are unconscionable in that Hagen took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree.  Hagen's unconscionable conduct gives Plaintiffs a right to relief under section 17.50(a)(3) of the DTPA; and

E.    Hagen's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

63.     Each of Hagen's above-described acts, omissions, and failures is a producing cause of Plaintiffs' damages.  All acts, omissions, and failures were committed "knowingly" and "intentionally" by Hagen, as defined by the Texas Deceptive Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

## FRAUD

64.     All allegations above are incorporated herein.

65.     Amica assigned or hired Hagen to adjust the claim.

   a.   Hagen had a vested interest in undervaluing the claims assigned to him by Amica in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of Plaintiffs' public adjuster's is evidence of fraud on the part of Hagen. The valuation of damages that were included in Hagen's report compared to Plaintiffs' public adjuster's is also evidence of fraud on the part of Hagen.

   b.   Furthermore, Hagen was aware of Plaintiffs' deductible before even visiting the Property to conduct the inspection. Hagen had advanced knowledge of what amount of damages he needed to find in order to either deny the claim or find the claim below the deductible.

   c.   Hagen made misrepresentations as to the amount of damage Plaintiffs' Property sustained as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiffs' property.

   d.   Hagen made further misrepresentations to Plaintiffs during his inspection. Hagen used his expertise to fabricate plausible explanations for why visible damage to

14

Plaintiffs' Property would not be covered under the policy. Such misrepresentations include damage to the Property owing from wear and tear, damage from a previous claim, damage that occurred under a previous policy, and damage of a type not consistent with the type of claim that was made.

## NEGLIGENCE

66. All allegations above are incorporated herein.

67. Hagen was negligent in his actions with regard to his adjusting of Plaintiffs' claim and violated the standard of care for an insurance adjuster licensed in the state of Texas. Those failures include one or more of the following acts or omissions:

    a. Failure to conduct a reasonable inspection;

    b. Failure to include covered damage that would be discovered as a result of reasonable inspection;

    c. Failure to identify the proper cause and scope of the damage to Plaintiffs' Property;

    d. Failure to identify the cost of proper repairs to Plaintiffs' Property; and

    e. Failure to communicate to Plaintiffs the reasons for specific determinations made regarding the inclusion or exclusion of damage to Plaintiffs' Property.

68. Hagen's acts and/or omissions constitute negligence. His conduct was, therefore, a proximate cause of the damages sustained by Plaintiffs.

69. At all relevant times, Hagen was an agent or employee of Defendant Amica.

70. Hagen's unreasonable inspection was performed within the course and scope of his duties with Defendant Amica. Therefore, Amica is also liable for the negligence of Hagen through the doctrine of respondeat superior.

## GROSS NEGLIGENCE

71. All allegations above are incorporated herein.

72. Hagen's actions or omissions constitute gross negligence as defined in TEX. CIV. P. & REM. CODE § 41.001 (11)(A) and (B):

   a. Hagen's actions, when viewed objectively from the standpoint of the actor at the time of their occurrence involves an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiffs; and

   b. Hagen had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, and/or welfare of Plaintiffs.

73. Hagen any intentionally misrepresented the scope and amount of damages on the estimate prepared for Plaintiffs' Property on behalf of Amica. His estimate was to such an extreme degree below what another licensed adjuster would have done in this situation (as evidenced by the Public Adjuster's estimate); it was also in complete disregard for the risk and harm Plaintiffs would suffer if the actual damages to the Property were allowed to persist unrepaired.

## KNOWLEDGE

74. Defendants made each of the acts described above, together and singularly, "knowingly," as defined in the Texas Insurance Code, and each was a producing cause of Plaintiffs' damages described herein.

## WAIVER AND ESTOPPEL

16

75.     Defendants waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiffs.

## DAMAGES

76.     The damages caused to the Property have not been properly addressed or repaired since the claim was made, causing further damage to the Property, and undue hardship and burden to Plaintiffs.  These damages are a direct result of Defendants' mishandling of Plaintiffs' claims in violation of the laws set forth above.

77.     Plaintiffs currently estimate that actual damages to the Property under the Policy are $46,729.97.

78.     Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained.  The above-described acts, omissions, failures, and conduct of Defendant has caused Plaintiffs' damages, which include, without limitation, the cost to properly repair Plaintiffs' Property and any investigative and engineering fees incurred.

79.     For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of his claims, consequential damages, together with attorney's fees.

80.     For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of benefits owed pursuant to the Policy, mental anguish, court costs, and attorney's fees.  For knowing and intentional conduct of the acts described above, Plaintiffs ask for three (3) times his actual damages. TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(b) (1).

81.   For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of his claims, plus a per annum interest penalty on those claims, as damages, as well as pre-judgment interest and reasonable attorney's fees.   TEX. INS. CODE §542.060.

82.   For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of duty, such as additional costs, economic hardship, losses due to the nonpayment of the amount Amica owed, exemplary damages, and damages for emotional distress.

83.   Defendants' breach of the common law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiffs' rights and welfare, and with "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies Code.   These violations are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages.   Therefore, Plaintiffs seek the recovery of exemplary damages in an amount determined by the finder of fact sufficient to punish Defendants for their wrongful conduct, and to set an example to deter Defendants and others from committing similar acts in the future.

84.   For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorneys subscribed to this pleading.   Therefore, under Chapter 38 of the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

18

85.     As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this Court.  As required by Rule 47(c)(4) of the Texas Rules of Civil Procedure, Plaintiffs' counsel states that Plaintiffs seek only monetary relief of no less than $100,000.00, but no more than $200,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. A jury will ultimately determine the monetary relief actually awarded, however.  Plaintiffs also seek pre-judgment and post-judgment interest at the highest legal rate.

## REQUESTS FOR DISCLOSURE

86.     Under Texas Rules of Civil Procedure 190 and 194, Plaintiffs request that Defendants disclose, within fifty (50) days from the date this request is served, the information or material described in Rules 190.2(b)(6) and 194.2.

## JURY DEMAND

87.     Plaintiffs hereby requests a jury trial for all causes of action alleged herein, tried before a jury consisting of citizens residing in Montgomery County, Texas.  Plaintiffs hereby tenders the appropriate jury fee.

## PRAYER

Plaintiffs prays that Defendants, Amica Mutual Insurance Company and Travis Hagen, be cited and served to appear, and that upon trial hereof, recovers from Defendant, Amica Mutual Insurance Company and Travis Hagen such sums as would reasonably and justly compensate Plaintiffs in accordance with the rules of law and procedure, as to actual, consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all

punitive, additional, and exemplary damages as may be found.  In addition, Plaintiffs requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended on Plaintiffs' behalf, for pre-judgment and post-judgment interest as allowed by law, and for any other relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

By: /s/ *Chad T. Wilson*

Chad T. Wilson
Bar No. 24079587
Tara L. Peveto
Bar No. 24076621
CHAD T. WILSON LAW FIRM PLLC
455 E Medical Center Blvd, Ste 555
Webster, Texas 77598
Telephone: (832) 415-1432
eservice@cwilsonlaw.com

ATTORNEYS FOR PLAINTIFFS